[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 28 2000
THOMAS K. KAHN
CLERK

No. 99-10565

D. C. Docket No. 99-00024-1-CV-WBH

ROBERT EUGENE LAMB, individually,
JAMES MORRIS LOFTON, individually,
ROBERT C. LEE, individually,
WILLIAM GORDON BAILEY, individually,

Plaintiffs-Appellants,

versus

TURBINE DESIGNS, INC., a Florida corporation

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

**(March 28, 2000)**

Before ANDERSON, Chief Judge, WILSON, Circuit Judge, and HILL, Senior Circuit
Judge.

HILL, Senior Circuit Judge:

Robert Eugene Lamb, James Morris Lofton, Robert C. Lee, and William Gordon Bailey, non-residents of Georgia, brought this action in the United States District Court for the Northern District of Georgia claiming that Turbine Design, Inc., also a non-resident of Georgia, violated the Florida Uniform Trade Secrets Act and the Georgia Trade Secrets Act, as well as a variety of other state statutory and common law duties, by misappropriating proprietary flight and engineering data and then improperly disclosing this information in an application filed with the Federal Aviation Administration in Atlanta, Georgia. The district court held that it had no jurisdiction over Turbine Design, Inc. and dismissed the case. Plaintiffs brought this appeal.

This diversity case presents the following question of law: is a non-resident subject to personal jurisdiction under the Georgia long-arm statute when he improperly discloses another non-resident's trade secret to a federal agency at its Georgia office? We certify this question to the Georgia Supreme Court because there is no controlling Georgia authority.

## I.

Plaintiffs are the former shareholders of Phoenix Corporation (Phoenix), a Mississippi corporation, which was involved in the development of a modification to the Beechcraft King Air aircraft. Phoenix applied to the Federal Aviation

2

Administration (FAA) for approval of this modification. While the application was pending, Megaflight, Inc. (Megaflight) purchased all the stock of Phoenix from the plaintiffs. Some time later, the FAA advised Megaflight that the Phoenix design modifications were deficient. Megaflight hired Turbine Design, Inc. (TDI) to correct the problems. Subsequently, TDI submitted its own application to the FAA for a design modification for the Beechcraft King Air aircraft. As required by law, it submitted the application to the FAA's office in Atlanta, Georgia. Plaintiffs then filed the present action in the northern district of Georgia.[1]

TDI moved to dismiss this action, asserting that the Georgia federal court had no jurisdiction over it. TDI pointed out that it is a Florida corporation; it is not authorized to do business in Georgia, does no business in Georgia, has no employees nor offices in Georgia, and does not have a registered agent for service of process in Georgia.

---

[1]Actually there was a proliferation of litigation at this point. Megaflight had sued plaintiffs in a Florida court alleging that they misrepresented the design modification as well as the assets owned by Phoenix when they sold it to Megaflight. Plaintiffs countersued alleging that Megaflight and others had misappropriated the Phoenix technical data and had failed to pay for plaintiff's stock in Phoenix. Since jurisdiction in Georgia will, of necessity, require a tort to have been committed there, it appears that ultimately the determination of the jurisdictional issue will depend upon the ownership of the design modification at the time it was disclosed to the FAA. This determination will also resolve all of the issues pending in the Florida court.

The plaintiffs conceded that TDI's only contact with Georgia was the submission of its application to the FAA's Atlanta, Georgia office, but argued that this contact was sufficient. Plaintiffs' theory is that TDI's disclosure of the Phoenix proprietary modification in its application to the FAA constituted a tort under the Georgia Trade Secrets Act, O.C.G.A. Section 10-1-761 (2)(B), and that this tort occurred in Atlanta, Georgia where TDI submitted the application. If so, the Georgia long-arm statute would appear to permit the district court to assert jurisdiction over TDI. *See* O.C.G.A. § 9-10-91(2) (Georgia court may exercise personal jurisdiction over a non-resident who commits a tortious act within the state). *See also Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits). Furthermore, Georgia's assertion of personal jurisdiction over a non-resident who commits a tort in Georgia would not offend the Constitution. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 447-78 (1985): *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (defendant who commits a tort in a particular state should reasonably expect to be subject to jurisdiction in that state, and exercise of personal jurisdiction under these circumstances does not violate due process). In order to resolve the issue of personal jurisdiction raised by the circumstances of this case, we must determine whether TDI's disclosure to the FAA

4

in Georgia of plaintiffs' trade secret constituted the sort of tort contemplated by

Section 9-10-91(2) of the Georgia long-arm statute.[2]

II.

The Georgia Trade Secrets Act defines misappropriation of a trade secret – a

tort – as:

> Disclosure or use of a trade secret of another without express or implied
> consent by a person who:
>
> (i)     Used improper means to acquire knowledge of a trade secret;
>
> (ii)    At the time of the disclosure or use, knew or had reason to know
> that knowledge of the trade secret was:

---

[2]The district court did not decide this issue.  Instead, it held that the tort, if any, in this case was committed in Florida where TDI is located and the trade secrets were "purloined."  This may well be true, but plaintiffs contend that TDI committed *a seperate* tort when it disclosed those trade secrets in Georgia.  We are also unpersuaded by the district court's alternative holding that, in any event, the "government contacts" defense would apply in this case to relieve TDI of liability for any tort it may have committed by virtue of its application to the FAA.  *See Klinghoffer v. S.N.C. Achille Lauro ed Altri-Gestione Motonave*, 937 F.2d 444 (2d Cir. 1991).  We agree with plaintiffs that this defense is unavailable where the defendant's contact perpetrates a fraud upon the government, which, under the allegations of the complaint, TDI intended to do by misappropriating their trade secrets and representing itself to the FAA as entitled to the design modification permit.  *See Nichols v. G.D. Searle & Co.,* 783 F. Supp. 233, 242 (D. Md. 1992) (constitution does not protect false statements nor intentional lie); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 786-87 (D.C. Cir. 1983) ("A different case might be presented had Naartex made credible and specific allegations in the district court that the companies had used the proceedings as an instrumentality of the alleged fraud").

<div style="margin-left: 3em;">

(I)    Derived from or through a person who had utilized improper means to acquire it;

(II)    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III)    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

</div>

(iii)    Before a material change in position, knew or had reason to know that it was a trade secret and the knowledge of it had been acquired by accident or mistake.

O.C.G.A. Section 10-1-761 (2)(B).

For the purposes of this motion, we assume the allegations of the complaint to be true. *Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988). Plaintiffs allege that TDI's "disclosure and tender of the trade secrets to the FAA in Atlanta, Georgia for use in evaluating [TDI's] application is a violation of the [Act.]" Furthermore, they contend that the "presence of these trade secrets in the State of Georgia beyond the control of plaintiffs creates the potential for further and possibly unknown injury to plaintiffs in the State of Georgia, for which relief is needed in the courts of this State." These allegations appear to state a claim under the Georgia Trade Secrets Act. If so, TDI has committed a tort in Georgia and is subject to its jurisdiction.

TDI argues that because they "completed the application for the [modification] in Florida, "they committed no tort in Georgia." They do not, however, offer any authority for this proposition. Nor do plaintiffs offer any authority for their contention that the disclosure of misappropriated trade secrets to a federal agency which happens to have an office for acceptance of applications in Georgia is the sort of tort contemplated by the Georgia long-arm statue. We also have been unable to find any Georgia case on point.

The resolution of this issue is not self-evident. On the one hand, we have the express language of the statute which appears to define the tort of misappropriation to include the act committed by TDI in Georgia. Furthermore, on similar facts, but in a case not involving the issue of long-arm jurisdiction, we have held that the improper disclosure of a trade secret in an application to the FAA "clearly constituted adverse use of [the plaintiff's] property." *Avco Corp. v. Precision Air Parts, Inc.,* 676 F.2d 494, 498 (11th Cir. 1982). Additionally, federal law permits the further unauthorized disclosure of these trade secrets by the FAA, thereby bolstering plaintiffs' theory that this disclosure constitutes a tort -- breach of statutory duty with resulting injury. *See Chevron Chemical Co. v. Costle*, 641 F.2d 104 (3d Cir. 1980) (a federal agency's subsequent intra-agency disclosure of trade secrets voluntarily submitted not a tort under trade secrets act). *See also Earthline Corp. v. Mauzy*, 385

7

N.E. 2d 928 (Ill. 1979)(state trade secret law did not prevent agency from disclosing to another agency trade secrets voluntarily submitted under licensing requirements).

If a tort has been committed in Georgia, then Georgia's long-arm statute would appear to permit even a *non-resident* plaintiff to use its long-arm statute to sue another non-resident who commits a tort in Georgia. *See Newman v. Fleming*, 331 F. Supp. 973 (S. D. Ga. 1971). Further, specifically in trademark cases, the exercise of personal jurisdiction over a foreign defendant has been upheld in a forum where the defendant attempted to pass off the goods as his own. *Topps Co., Inc., v. Gerril J. Verburg Co.,* 961 F. Supp. 88, 90-91 (S.D.N.Y. 1977).

On the other hand, it seems quite possible that a Georgia court might hold that this is not the sort of act which triggers its long-arm statute. It is clear that Georgia has almost no interest in this litigation, nor any stake in the outcome. No party is from Georgia. The alleged tortious disclosure was to a federal, not a Georgia agency.

We conclude that this issue of state law is both unsettled and pivotal to the resolution of this case. We are reluctant to guess on an issue which so greatly impacts on the basic jurisdiction of the Georgia courts. Accordingly, we respectfully certify the to the Supreme Court of Georgia the following question:

> IN GEORGIA, IS A NON-RESIDENT SUBJECT TO PERSONAL JURISDICTION UNDER O.C.G.A. § 9-10-91(2) WHEN HE IMPROPERLY DISCLOSES

ANOTHER NON-RESIDENT'S TRADE SECRET TO A
FEDERAL AGENCY AT ITS GEORGIA OFFICE?

Our statement of the question is not meant in any way to limit or direct the scope of inquiry by the Supreme Court of Georgia. On the contrary:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis . . . . This latitude extends to the Supreme Court's restatment of the issue or issues and the manner in which the answers are to be given. . . .

*Martinez v. Rodriquez*, 394 F.2d 156, 159 n.6 (5th Cir. 1968). The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

## III.

We CERTIFY the state law question of whether a non-resident is subject to personal jurisdiction under O.C.G.A. § 9-10-91(2) when he improperly discloses another non-resident's trade secret to a federal agency at its Georgia office. We WITHHOLD any decision about the district court's dismissal of the case for want of personal jurisdiction. QUESTION CERTIFIED.

9