388 F.Supp. 53 (1974)
Tom BRADLEY et al., Plaintiffs,
v.
William B. SAXBE, Defendant.
Civ. A. No. 74-1327.
United States District Court, District of Columbia.
December 18, 1974.
*54 Charles S. Rhyne, Washington, D. C., for plaintiffs.
David J. Anderson, Dept. of Justice, Washington, D. C., for defendant.

*55 MEMORANDUM AND ORDER
GESELL, District Judge.
Plaintiff organizations representing their member cities, counties and mayors, respectively, seek a declaratory judgment to the effect that they, their named officers, and their full-time salaried employees are exempt from registration under the Federal Regulation of Lobbying Act, 2 U.S.C. § 261 et seq. They contend that the organizations are, in each case, mere extensions or agents of the public officials who created them, that all their activities are financed entirely from public funds, and that while their officers and employees are admittedly engaged in lobbying activity, they are not required to register under section 308 of the Act because such organizations, officers and employees are exempted from registration as "public official[s] acting in [their] official capacity," by section 308 of the Act, 2 U.S.C. § 267(a). Asserting that they are threatened with imminent criminal prosecution for failure to register, they filed this complaint to resolve the controversy. The matter comes before the Court on cross-motions for summary judgment and has been fully briefed and argued.[*]
The general rule that equity will not act in anticipation of criminal prosecutions is subject to exceptions. Zemel v. Rusk, 381 U.S. 1, 19, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958). While there is no precise test in such situations, one important factor is whether the penalties involved are so great that unless declaratory relief is entertained, the plaintiffs will, as a practical matter, be compelled to forego their legal position and be obliged to submit. See Terrace v. Thompson, 263 U.S. 197, 212, 44 S.Ct. 15, 68 L.Ed. 255 (1923). See also, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). This factor is clearly present here since under 2 U.S.C. § 269(b) any person convicted of violating the Lobbying Act is automatically prohibited for three years from "attempting, directly or indirectly, to influence the passage or defeat of any proposed legislation" in Congress. To the employees of plaintiff organizations, the threat that upon conviction they would be barred for three years from continuing their employment is obviously far more imposing than the possibility of being fined in a test case. Rather than run that risk, if declaratory relief is denied, they may well be forced to submit to a statute they sincerely claim cannot legally be applied to them. See National Assn. of Manufacturers v. McGrath, 103 F.Supp. 510, 512 (D.D.C.), vacated as moot, 344 U.S. 808, 73 S.Ct. 31, 97 L.Ed. 627 (1952).
This in terrorem effect is made all the more compelling by the disturbing First Amendment overtones, discussed more fully below, of threatened criminal prosecutions in these circumstances. See N. A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Dombrowski v. Pfister, 380 U.S. 479, 485-489, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); National Student Assn. v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103 (1969); Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947, rev'd, 408 U.S. 1, 92 S.Ct. 231, 33 L.Ed.2d 154 (1972).
It should also be noted that the principles of federalism and comity which have prompted federal courts to abstain from intervening in pending state criminal prosecutions, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), work in quite the opposite direction *56 here where agents of state officials threatened with federal prosecution seek to invoke the aid of a federal court of equity to clarify their obligations under federal law, cf. Steffel v. Thompson, supra, 415 U.S. at 462, 94 S.Ct. 1209, particularly since the issues presented are purely legal involving statutory interpretation, uncluttered by factual disputes. Compare Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), with United Public Workers v. Mitchell, 330 U.S. 75, 90, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Thus a declaratory judgment is not barred because the issue may also be tested by criminal prosecution.
It is necessary next to consider whether there is a sufficient real and tangible threat of criminal prosecution to present a "case or controversy." The Court has concluded this case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The Attorney General has apparently pointedly informed some interested public officials that prosecutions will be brought. Cf. Steffel v. Thompson, supra, 415 U.S. at 455-456, 459, 94 S.Ct. 1209. Defendant Saxbe's counsel has, moreover, not undertaken to deny this alleged threat, but rather has reiterated as the official position of the Department of Justice in this litigation that plaintiff organizations are in fact required to register.[**]Cf. Abbott Laboratories v. Gardner, supra, 387 U.S. at 152, 87 S.Ct. 1507 (1967). This is not theoretical. Agents of the FBI, acting under the direction of the Criminal Division of the Department of Justice, have begun active field investigations to gather evidence against certain employees of at least two of the three plaintiff organizations. While it may be true, as the Government maintains, that the Department of Justice has not yet selected particular employees of plaintiff organizations to indict, the fear of prosecution here is "realistic" rather than "chimerical" in light of these undisputed facts. Poe v. Ullman, 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L. Ed.2d 989 (1961).
With these considerations in mind, the equities of the situation call for prompt resolution of the controversy in the public interest. The involvement of cities, counties and municipalities in the day-to-day work of the Congress is of increasing and continuing importance. The Court must recognize that the voice of the cities, counties and municipalities in federal legislation will not adequately be heard unless through cooperative mechanisms such as plaintiff organizations they pool their limited finances for the purpose of bringing to the attention of Congress their proper official concerns on matters of public policy. Cf. Gravel v. United States, 408 U.S. 606, 616-617, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Registration involves numerous administrative and practical difficulties in this instance. On the other hand, criminal prosecution would create uncertainties and interfere with the on-going work of the plaintiff organizations by creating doubts as to the propriety of their lobbying efforts.
The issues here are purely federal and of such major national consequence that the Court has concluded a declaratory judgment is appropriate in the public interest. The Court therefore reaches the merits.
The question of statutory interpretation presented is easily delineated but not without its difficulties. On the one hand, a clear exemption exists for public *57 officials acting in their official capacity. On the other hand, those who work for "organizations" must register their individual lobbying employees. Here the plaintiff organizations are, although corporate in form, organizations financed with public money concerned solely with lobbying in the public interest for officials who are themselves exempt and all of the lobbying work is for governmental purposes and is financed from public funds. Virtually nothing in the legislative history casts much light on this latent ambiguity in the statute.
Plaintiffs claim that the statutory exemption runs to full-time agents of public officials paid solely from public funds and lobbying solely on behalf of governmental, i. e., official, interests. There have been very few prosecutions under the statute; none that raise the issue presented in this litigation. Congress appears to have impliedly acquiesced in the interpretation urged by plaintiffs. These organizations and their employees have openly functioned in a lobbying capacity in both houses of Congress for many years, and their useful activities are well known to Congress, but no prosecution has ever been brought. See 2A Sands, Sutherland on Statutory Construction (4th ed. 1973) §§ 49.03, 49.07 and 49.10.
Of even greater significance is the narrow ground by which the constitutionality of the Act itself was sustained by a divided Court in United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). A close reading of the Supreme Court decision indicates that the Court sustained the Act by finding as a proper purpose underlying the statute the effort of Congress to force disclosure by private "special interest groups seeking favored treatment while masquerading as proponents of the public weal." Id. at 625, 74 S.Ct. at 816. This narrow purpose, read into the statute, enabled the Court to overcome the First Amendment challenge. This purpose would not be effectuated by registration in this particular instance. Here there can be no doubt that all officers and employees of the plaintiff organizations are engaged in lobbying solely for what may properly be stated to be the "public weal" as conceived by those in Government they represent who are themselves officials responsible solely to the public and acting in their official capacities. The narrow interpretation of the Act should be maintained to assure its constitutionality. Significantly, the legislative history reveals the definition of "organization" was intended to apply to "business, professional and philanthropic organizations," not to organizations of public officials and their agents. S.Rep. No. 1400, 79th Cong., 2d Sess., 27. United States v. Harriss, supra, 347 U.S. at 620-621, n.10, 74 S.Ct. 808. The activities of the public officials here under review are not such as fall within the realm of prohibition which the Supreme Court used to justify the constitutionality of the Act.
The Act was not intended to apply to full-time employees of plaintiff organizations engaged exclusively in lobbying for cities, counties and municipalities. A declaratory judgment in favor of plaintiffs in the form attached will be and hereby is granted and defendant's motion to dismiss or for summary judgment is denied. Plaintiffs' prayer for injunctive relief is denied. See Washington Research Project, Inc. v. H. E. W., 504 F.2d 238, 252-253 (D. C.Cir. 1974). The foregoing shall constitute the Court's findings of fact and conclusions of law.
So ordered.

DECLARATORY JUDGMENT
On the application for declaratory judgment filed by the National League of Cities, the National Association of Counties, and the United States Conference of Mayors, on behalf of their full-time officers and their full-time employees, it is
Declared that each such officer and employee is exempt from registration under the Federal Regulation of Lobbying Act so long as such person engages *58 in lobbying undertaken solely on the authorization of a public official acting in his official capacity and such person receives his sole compensation and expenses for lobbying activity directly or indirectly from public funds contributed by cities, counties or municipalities, as the case may be.
Enter judgment accordingly, so ordered.
NOTES
[*] The Court denied plaintiffs' application for a three-judge court and neither the plaintiffs nor the Government sought appellate review of that ruling. Plaintiffs' application for preliminary injunction was abandoned in order to bring the merits forward for prompt resolution.
[**] "On the other hand, it . . . remains the view of this Department that salaried employees of associations which represent the federal legislative interests of governmental entities . . . are not exempted from the requirements of 2 U.S.C. 267 simply because the funds with which such activities are funded originate in the first instance, from the treasury of some governmental entity." Defendant's Statement of Material Facts as to Which There is No Genuine Dispute, ¶ 3.