**COALITION ON SENSIBLE TRANSPORTATION INC.,
et al., Plaintiffs,**

**v.**

**Elizabeth DOLE, United States Secretary of Transportation, et al., Defendants.**

**No. 85–2759.**

United States District Court, District of Columbia.

April 2, 1986.

Brian Leitch, Washington, D.C., for plaintiffs.

Rebecca Ross, Asst. U.S. Atty., Washington, D.C., for Federal defendants.

Louisa Goldstein, Asst. Atty. Gen., State of Md., Baltimore, Md., for defendant Kassoff.

## MEMORANDUM

GASCH, Senior District Judge.

This case concerns the planned widening of a portion of Interstate Highway 270 ("I-270") in Montgomery County, Maryland. Plaintiffs are the Coalition on Sensible Transportation, the Northern Bethesda Congress of Citizens Associations, the Sierra Club, and the Washington Area Bicyclists Association. Defendants are Elizabeth Dole, the Secretary of Transportation, Ray Barnhart, Administrator of the Federal Highway Administration, and Hal Kassoff, Administrator of the State Highway Association ("SHA") of the State of Maryland Department of Transportation.

Two motions are pending. In the first, Kassoff asserts that this Court lacks personal jurisdiction and venue over the claims against him and seeks dismissal of those claims or transfer of the case to the U.S. District Court for the District of Maryland. In the second motion, the federal defendants seek to transfer the case to that court under 28 U.S.C. § 1404(a) (1982).

## I. BACKGROUND

I-270 is one of the major arteries of the Washington, D.C. area highway system. The road connects Interstate Highway 70, one of the nation's primary east-west highways, with Interstate Highway 495, the "Beltway" which encircles metropolitan Washington, D.C. A number of bedroom communities, towns, and government agency offices line the I-270 corridor. Accordingly, the highway is a heavily traveled conduit for commuter traffic to and from Washington, D.C.

The I-270 project challenged by plaintiffs would widen approximately sixteen miles of highway at an estimated cost of $113.5 million. From the I-270 spur near Montrose Avenue to the I-270 intersection with Md. Rt. 124, the highway would be widened from six to twelve lanes. From Md. Rt. 124 to Md. Rt. 118, I-270 would be widened from six to eight lanes. Finally, from Md. Rt. 118 to Md. Rt. 121, I-270 would be widened from four to six lanes. The project is expected to take more than five years to complete.

The complaint alleges several violations of federal law arising from administrative consideration of the I-270 project. First, it is contended that defendants have failed to comply with the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4347 (1982). This claim revolves around defendants' failure to prepare an environmental impact statement and to adequately consider alternatives. Plaintiffs also insist that defendants improperly divided the I-270 project for purposes of environmental impact review.

Second, plaintiffs assert that the I-270 project will require use of parklands in violation of Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303 (1982). Third, defendants are alleged to have undertaken the I-270 project in violation of the public hearing requirements of Section 128 of the Federal-Aid Highway Act, 23 U.S.C. § 128 (1982).

## II. DISCUSSION

### A. *State Defendant's Motion to Dismiss or Transfer*

■ Since neither Kassoff nor the SHA resides in the District, this Court may assert personal jurisdiction only pursuant to the long-arm statute, D.C.Code § 13-423 (1981 ed.) *See Reuber v. United States,* 750 F.2d 1039, 1049 (D.C.Cir.1984). Plaintiffs bear the burden of establishing an adequate factual basis for long-arm jurisdiction. *Id.* at 1052; *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 785 (D.C.Cir. 1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). Here plaintiffs contend that Kassoff and the SHA "transacted business" in the District within the meaning of D.C.Code § 13-423(a)(1).

Kassoff vigorously disputes this contention. By affidavit, he notes that the SHA has no office in the District of Columbia

and conducts no business here. The affidavit asserts that all actions related to the I-270 project, including Kassoff's dealings with federal officials, occurred in Maryland. Moreover, Kassoff argues that, even if SHA officials did meet with federal officials in the District, such contacts fall within the "government contacts" exception to the long-arm statute.

Plaintiffs assert four bases for long-arm jurisdiction. First, they contend that, because I-270 is within the Washington, D.C. region and affects the commuting of many District residents, there are sufficient "contacts" with the District to satisfy the long-arm statute. Plaintiffs cite no cases, however, in which the mere proximity of a project to the District, and that project's potential impact upon District residents, have been found to constitute "transacting business" under the long-arm statute. Indeed, the court of appeals recently implicitly rejected this type of argument:

> While [plaintiff] in its pleadings in the district court contended that the defendants' acts ... "were intended to have an impact in this District," we cannot reasonably conclude, and [plaintiff] does not here contend, that any "tortious injury" in the District forms the basis for this action. Personal jurisdiction may be exercised over the private defendants, therefore, only if they "transact[ed] business" in the District in connection with the operative facts of this action.

*Naartex,* 722 F.2d at 785-86. Thus, the I-270 project's likely impact upon District residents is not sufficient to permit the exercise of personal jurisdiction under the long-arm statute.

Plaintiffs' second and third jurisdictional contentions state that SHA officials have met with federal officials in the District and that the SHA has received federal funding for the I-270 project. These two alleged contacts call into question the "government contacts" exception to the

long-arm statute, which provides that personal jurisdiction may not be founded upon contacts with the federal government. *See, e.g., Naartex,* 722 F.2d at 785; *National Coal Association v. Clark,* 603 F.Supp. 668, 671 (D.D.C.1984); *Hughes v. A.H. Robins Co., Inc.,* 490 A.2d 1140, 1145 n. 4 (D.C.App.1985). As the District of Columbia Court of Appeals has explained, the government contacts exception

> finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 813 (D.C.App.1976) (en banc).

Conflicting decisions of the D.C. Court of Appeals have made the scope of the government contacts exception, uncertain, however. *See Naartex,* 722 F.2d at 786-87; *Beachboard v. Trustees of Columbia University,* 475 A.2d 398, 401 n. 3 (D.C.App. 1984). The en banc decision in *Environmental Research* indicated that the government contacts exception applied to *all* contacts with a federal instrumentality. *See* 355 A.2d at 813. Two years later, however, a three-judge panel concluded that the government contacts exception applied *only* to contacts related to the exercise of first amendment rights. *Rose v. Silver,* 394 A.2d 1368, 1374 (D.C.App.1978). The D.C. Court of Appeals has noted this conflict, *see Beachboard,* 475 A.2d at 401 n. 3, but has not clarified the law.[1]

---

1. In the D.C. Court of Appeals' most recent discussion of the government contacts exception, the court appeared to carefully avoid the area of conflict: "In the District of Columbia, however, those activities which are conducted here solely for the purpose of gathering information from the federal government are not 'contacts' .... Hence jurisdiction ... cannot be based on the activities ... which consist entirely of monitoring congressional legislation." *Hughes v. A.H. Robins Co., Inc.,* 490 A.2d at 1145 n. 4.

In this case, the alleged meetings with federal officials implicate first amendment concerns and thus are exempted under either formulation of the government contacts exception. *See Naartex*, 722 F.2d at 787. The SHA's asserted receipt of federal funds, however, does not clearly involve first amendment concerns.[2] Thus, this Court must determine which formulation of the exception should be applied.

The *Naartex* court strongly suggested that *Environmental Research* remains controlling because a single panel of the D.C. Court of Appeals cannot overrule an en banc decision. *See* 722 F.2d at 786-87 (citing *M.A.P. v. Ryan*, 285 A.2d 310 (D.C. App.1971)); *see also Reuber v. United States*, 787 F.2d 599, 600 & n. 1 (D.C.Cir. 1986). This Court agrees that the *Environmental Research* formulation is applicable; accordingly, the SHA's contacts related to the procurement of federal funding for the I-270 project are excluded from the jurisdictional determination.[3]

Plaintiffs' fourth asserted basis for jurisdiction is that the SHA has contracted with District of Columbia firms to perform aspects of the I-270 project. Kassoff argues that the SHA has not directly contracted with any D.C. firms; rather, the primary contractor hired by the SHA has subcontracted with D.C. firms. Moreover, Kassoff argues that even if subcontracting constitutes a "contact" in the jurisdictional sense, plaintiffs' claims do not arise from that contact, as the long-arm statute requires. *See* D.C.Code § 13-423(b) (1981 ed.).

The Court agrees with the latter contention. Plaintiffs' claims arise from alleged improprieties in the administrative process and not from the SHA's contracting relationship, if any, with D.C. firms. The statutory requirement that a claim must arise

**2.** While the first amendment right to petition the government for redress of grievances does extend to efforts to protect proprietary interests from adverse regulation, *see Naartex*, 722 F.2d at 787, defendants do not contend that the right encompasses efforts to obtain federal grants and to negotiate their terms.

**3.** Compelling policy reasons support applying the government contacts exception to cases such

from the alleged contacts is closely enforced by the courts. *See, e.g., Naartex*, 722 F.2d at 785; *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C.Cir.1981); *Beachboard*, 475 A.2d at 399. Since plaintiffs cannot meet that requirement, the fourth basis for jurisdiction is insufficient.

Because the jurisdictional allegations fail to demonstrate contacts sufficient to permit the assertion of long-arm jurisdiction over Kassoff, the motion to dismiss must be granted.

#### B. *Status of State Defendant*

■ The Court next must consider whether dismissal of the claims against Kassoff and the SHA should affect the remainder of the case. It is argued that Kassoff and the SHA are "indispensable" parties whose absence requires dismissal of the case. *See* Fed.R.Civ.P. 19(b). The Court disagrees.

Under Rule 19, a court first must consider whether an entity meets the requirements of Rule 19(a) and thus is a "necessary" party. *See Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington*, 699 F.2d 1274, 1278-79 (D.C.Cir.1983). If so, and if that entity cannot be made a party to the case, the court must determine whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b); *see* 3A J. Moore, *Moore's Federal Practice* ¶ 19.07-2.[0] (2d ed. 1985). These determinations require a pragmatic appraisal of the relevant practical effects of proceeding without the absent entity. *See Park v. Didden*, 695 F.2d 626, 628-29 (D.C. Cir.1982).

as this. Given the reach of the federal government in modern times, it would be difficult to find *any* state agency or local agency which has not, at some point, sent an official to the District of Columbia to appeal for and negotiate the terms of federal aid. Unless the government contacts exception applies to such contacts, every recipient of federal aid could be haled into court in the District of Columbia.

Rule 19(a) provides that an entity is a necessary party if "(1) complete relief cannot be accorded in its absence; or (2) the absentee's ability to protect its interest may be impaired by the disposition of the action; or (3) those already parties will be subject to a substantial risk of incurring inconsistent obligations because of the absence." *Cloverleaf Standardbred Owners*, 699 F.2d at 1278–79. The SHA has an interest in the I–270 project that would be impaired if plaintiffs obtain their requested relief and thus is a necessary party. *See Stevens v. Bartholomew*, 222 F.2d 804, 806 (D.C.Cir.1955) (per curiam).

With respect to the determination whether a party is indispensable, the Supreme Court has noted "four 'interests' that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109, 88 S.Ct. 733, 737–38, 19 L.Ed.2d 936 (1968). These four interests are the plaintiff's interest in having a forum, the defendant's interest in avoiding inconsistent relief or multiple litigation, the absent party's interest in protecting his rights, and the public interest in complete and efficient resolution of controversies. *Id.* at 109–11, 88 S.Ct. at 737–38.

Plaintiffs' interest in having an adequate forum weighs against dismissal of this case. To be sure, this action could be transferred to the federal court in Maryland, where all parties presumably could be joined. The delay caused by such a transfer makes that forum unsatisfactory, however, since plaintiffs have represented to the Court that they soon will seek a preliminary injunction to prevent further action with respect to the I–270 project. *See Mikulay Co. v. Urban Mass Transportation Administration*, 90 F.R.D. 250, 252 (D.D.C.1980) (noting that delay could prejudice efforts to obtain preliminary relief); *see also Ilan-Gat Engineers, Ltd. v. Antigua International Bank*, 659 F.2d 234, 241–42 (D.C.Cir.1981) (noting that plaintiff may be prejudiced by delay and cost arising from dismissal). In addition, litigating in Balti-more would be more costly for plaintiffs, since plaintiffs and their counsel are based in the Washington, D.C. area. *See Defenders of Wildlife v. Andrus*, 77 F.R.D. 448, 451 (D.D.C.1978) (noting potential financial hardship to plaintiffs).

The second interest is not at issue in this case. There is no indication that allowing this case to proceed without Kassoff and the SHA will result in multiple litigation or inconsistent obligations on the part of the federal defendants.

The third interest also weighs against dismissal. It is clear that Kassoff and the SHA have an interest in protecting Maryland's rights, which undoubtedly will be affected to some extent if plaintiffs prevail. As courts have noted, however, simply because an entity "has an interest in this suit and may be affected by it ... [is] not sufficient to qualify a party as indispensable." *Swomley v. Watt*, 526 F. Supp. 1271, 1273 (D.D.C.1981); *see also Defenders of Wildlife*, 77 F.R.D. at 452.

The interests of Kassoff and the SHA will be adequately protected for two reasons. First, there is substantial identity of interests among the federal defendants and the state entities; all seek defeat of plaintiffs' claims and prompt completion of the I–270 project as it is currently planned. This identity of interests "obviate[s] any serious possibility of prejudice" to Maryland's interests. *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 73 (2d Cir.1984); *see also Mikulay Co.*, 90 F.R.D. at 253; *Defenders of Wildlife*, 77 F.R.D. at 452. In addition, if Kassoff and the SHA conclude that their interests will be prejudiced, they may protect those interests by intervening. *See Samaha v. Presbyterian Hospital*, 757 F.2d 529, 531 (2d Cir.1985); *Student Public Interest Research Group v. Monsanto Co.*, 600 F.Supp. 1479, 1484 (D.N.J.1985); *Defenders of Wildlife*, 77 F.R.D. at 452; *see also* Advisory Committee Notes to 1966 Amendments to Rule 19.

The Court also believes that proceeding without Kassoff and the SHA will not disserve the public interest in complete, consistent, and efficient settlement of dis-

putes. There is no potential for duplicative litigation and, should plaintiffs receive the relief requested, any order issued by this Court against the federal defendants would fully satisfy plaintiffs' claims. *See Bermudez v. United States Department of Agriculture,* 490 F.2d 718, 724 (D.C.Cir.), *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973).

The conclusion that the state entities are not indispensable parties is consistent with past decisions in this circuit. In cases where plaintiffs have challenged the propriety of decisionmaking by federal administrative agencies, courts frequently have concluded that states and municipalities affected by that decisionmaking are not indispensable parties. *See, e.g., Bermudez,* 490 F.2d at 718; *Mikulay Co.,* 90 F.R.D. at 250; *Defenders of Wildlife,* 77 F.R.D. at 448. *Cf. Illinois v. City of Milwaukee,* 406 U.S. 91, 97, 92 S.Ct. 1385, 1389, 31 L.Ed.2d 712 (1972) (in case challenging water pollution caused by four Wisconsin cities, joinder of Wisconsin "is not mandatory"); *Utz v. Cullinane,* 520 F.2d 467, 472 n. 9 (D.C.Cir. 1975) (in case challenging D.C. Police Department's routine transmittal of arrest records to FBI and national dissemination of those records by FBI, FBI not an indispensable party); *State Water Control Board v. Washington Suburban Sanitary Commission,* 61 F.R.D. 588, 591 (D.D.C. 1974) (Maryland held not indispensable party to suit challenging discharge of sewage into Potomac and Anacostia Rivers).

In sum, the Court's review of the interests identified by Rule 19(b) leads it to conclude that Kassoff and the SHA are not indispensable parties.[4] As such, dismissal

of this case under Rule 19(b) is not warranted.

### C. *Federal Defendants' Motion to Transfer*

■ The federal defendants argue that the Court should transfer this case to the federal district court in Maryland under 28 U.S.C. § 1404(a) (1982). They assert that Maryland is a more convenient forum because it was the site of most of the acts and decisions concerning the I–270 project and because I–270 lies wholly in Maryland.

Under Section 1404(a), the parties moving for transfer have the burden of persuasion, and the court must accord weight to the plaintiff's choice of forum. *SEC v. Savoy Industries, Inc.,* 587 F.2d 1149, 1154 (D.C.Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). Generally, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

This Court has broad discretion in making the transfer determination. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981); *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). The Court must make "an individualized, case-by-case consideration of convenience and fairness," *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964), in an effort to avoid "unnecessary inconvenience and expense to parties, witnesses, and the public." *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19,

---

**4.** The Court thus need not determine whether this case falls within the "public rights" exception to Rule 19. When a case involves "vindication of a public right, third persons who could be adversely affected by a decision favorable to the plaintiff do not thereby become indispensable parties." *Jeffries v. Georgia Residential Finance Authority,* 678 F.2d 919, 929 (11th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *see also National Licorice Co. v. NLRB,* 309 U.S. 350, 363, 60 S.Ct. 569, 84 L.Ed. 799 (1940); *Kirkland v. New York Department of Correctional Services,* 520 F.2d 420, 424

(2d Cir.1975), *cert. denied,* 429 U.S. 823, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *Swomley v. Watt,* 526 F.Supp. 1271, 1273 (D.D.C.1981). The exception has been found to apply where, as here, plaintiffs assert claims under the National Environmental Policy Act of 1969. *See Natural Resources Defense Council, Inc. v. Berklund,* 458 F.Supp. 925, 933 (D.D.C.1978), *aff'd per curiam,* 609 F.2d 553 (D.C.Cir.1979); *Louisiana v. Lee,* 596 F.Supp. 645, 651 (D.La.1984), *vacated on other grounds and remanded,* 758 F.2d 1081 (5th Cir.1985).

21, 80 S.Ct. 1470, 1472, 4 L.Ed.2d 1540 (1960). In addition, "[i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." *Gulf Oil Co.*, 330 U.S. at 509, 67 S.Ct. at 843.

Here, plaintiffs and their members are located in the Washington, D.C. area, so this forum clearly is more convenient for them. In addition, the dismissal of Kassoff means that all defendants are located in this forum. Moreover, the administrative record of the I–270 project, which will be the focus of this Court's decision on the merits, is in this forum. Considerations of convenience and fairness thus oppose transfer.

The "localized controversy" consideration also favors retention of the case by this Court. Traffic patterns on I–270, and the use of parkland along I–270, clearly are matters of considerable importance to commuters and other residents of the District and communities along the I–270 corridor. While all Maryland residents may have an interest in the controversy over the I–270 project, the focus of that interest is with residents of this area. Those residents have a strong interest in keeping this case in this Court, where it can be decided "in their view." [5]

Because the federal defendants have not made the strong showing required to upset plaintiffs' choice of forum, the motion to transfer must be denied.

---

**5.** *D.C. Federation of Civic Ass'ns v. Adams,* No. 77–0421 (D.D.C. Apr. 14, 1977), is not to the contrary. There the Court granted a motion to transfer a case involving construction of a leg of Interstate Highway 66 to the U.S. District Court for the Eastern District of Virginia, in Alexandria, Virginia. Mem. op. at 4. That decision was heavily reliant upon the transferee court's greater familiarity with the issues underlying the litigation and past experience with similar cases challenging I–66. *Id.* at 3–4. There has been no showing that the federal court in Baltimore has any greater familiarity or expertise with cases involving I–270.