**PARADYNE CORPORATION, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

Civ. A. No. 86–2609.

United States District Court,
District of Columbia.

Nov. 3, 1986.

Michael S. Sundermeyer and Brendan V. Sullivan, Jr., Washington, D.C., for plaintiff.

Alan E. Kleinburd, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

Paradyne Corporation ("Paradyne") entered into a one-year contract with the Social Security Administration ("SSA") in 1981 to supply computer equipment and maintenance services for the equipment. The contract is renewable at the Government's discretion each year until 1989 and has been renewed every year since 1981, including the term 1986–87. Notwithstanding SSA's actions, the Department of Justice ("DOJ") has instituted both criminal and civil law suits against Paradyne on the ground that the corporation defrauded the United States to win the contract.[1] In its motion, Paradyne claims that the issue before the Court is purely legal:

> [M]ay the United States Government, through the Department of Justice, threaten a corporation with criminal prosecution, civil penalties, double damages and forfeiture of its profits for performance under a contract it has declared to be null and void, while another agency of the same government [SSA] continues to demand that performance?

*See* Plaintiff's Motion for Summary Judgment at 9. Paradyne claims that if its rights and duties are not clarified by the Court it will be forced to either breach its contract with the SSA, perform without pay or proceed in the face of possible civil or criminal prosecution. Paradyne seeks a declaration by the Court that these executive agencies cannot maintain their inconsistent postures.

## II. BACKGROUND

On June 10, 1980, the SSA issued a request for proposals ("RFP") to replace its nationwide automated data processing system and communications network, known as the Social Security Administration Data Acquisition and Response System ("SSA-DARS"). The RFP specified several conditions. *Inter alia*, these systems were to be kept available for lease to the SSA on a year-to-year basis for at least eight years. The successful contractor would be required to provide maintenance on these computers for the same period.

1. DOJ and SSA will jointly be referred to as the Government.

On March 27, 1981, the SSA awarded the one-year SSADARS contract to Paradyne Corporation, the low bidder. *See* Contract No. 600–18–0056. At present, Paradyne is still performing under this contract, the SSA having exercised its option to extend the contract every year since 1981. Each year the SSA expends nearly $8 million to lease and maintain the SSADARS system. Despite early allegations by the government that Paradyne's products failed to meet RFP specifications, *SEC v. Paradyne Corporation*, C.A. No. 83–351 at 13 (M.D. Fla. March 25, 1983), in March of 1985 HHS wrote, "[T]here is ... no basis for taking action [against Paradyne] under the [contract] provision related to performance ... [n]or is there a history of unsatisfactory performance beyond that anticipated and provided for in the contract ... [Paradyne's] performance today is satisfactory." *See Department of Health & Human Services Study Team, Report on the SSA-DARS Contract to the Paradyne Corporation*, at 14, 27 (March 12, 1985). There can be no doubt today that the system performs satisfactorily.

Notwithstanding the performance of Paradyne's information communication system, the government questions whether Paradyne legitimately obtained its contract with the SSA. On July 14, 1982, Congressman Brooks, Chairman of the House Committee on Government Operations, began an investigation of the SSADARS procurement. His Committee recommended that the SSA suspend Paradyne. The SSA ignored this suggestion. On November 5, 1982, the Securities and Exchange Commission began an investigation of the SSADARS procurement. The agency filed a civil suit on March 25, 1983, on the basis of this investigation but discontinued it when Paradyne signed a consent decree. The decree did not include any admission of liability by Paradyne. On April 12, 1983, the DOJ subpoenaed Paradyne to produce certain documents to a grand jury in the Middle District of Florida. On December 12, 1985, a grand jury returned an indictment against Paradyne, eight of its current and former officers and employees, and the former director of the Office of Data Communications at SSA, charging conspiracy to defraud, false statements, bribery, perjury, and obstruction of justice. This action is pending and is scheduled to go to trial in January of 1987. Finally, on or about August 6, 1986, the DOJ filed a civil suit against Paradyne, demanding recovery of damages for violations of the False Claims Act, 31 U.S.C. § 3729–31, for each claim submitted by Paradyne under the SSA-DARS contract and all profits earned by Paradyne on the contract on a common law theory of unjust enrichment. In support of its claim for unjust enrichment, DOJ declared that Paradyne's fraud in obtaining the SSADARS contract rendered that contract null and void.

After reviewing the DOJ's newly filed civil suit, Paradyne's counsel called the DOJ to express concern that, if one accepted the theory of its law suit, Paradyne could arguably be making a "false claim" each time it submitted a monthly invoice for equipment rental and maintenance as required by the 1986–87 contract. Paradyne sought reassurances from the DOJ and the SSA that, if the SSA exercised its option to renew the contract for 1986–87, the DOJ would not seek, on the basis of allegations in its recently filed suit, civil penalties for false claims, criminal indictments, or to recover Paradyne's profits for work performed for the period of the 1986–87 contract renewal. On or about August 28, 1986, the DOJ advised Paradyne that it would not provide any assurances that it would not bring action against Paradyne for future acts. On September 4, 1986, the SSA officially notified Paradyne that it was exercising its option under the SSADARS contract to renew the equipment leases and Paradyne's maintenance obligations for another year, beginning October 1, 1986, and up to and including September 30, 1987. *See* Modification No. 37 to Contract No. 600–18–0056. In response, Paradyne filed this suit.

### III. GOVERNMENT'S MOTION TO TRANSFER

 The Government has moved to transfer this case to the Middle District of

Florida pursuant to 28 U.S.C. § 1404 (1982). Section 1404 permits the transfer of a case "for the convenience of parties and witnesses, in the interest of justice." *Id.* The defendant bears the burden of establishing that transfer is warranted. *IBPATU v. Best Painting & Sandblasting Co.*, 621 F.Supp. 906, 907 (D.D.C.1985). In *Coalition on Sensible Transportation, Inc. v. Dole*, 631 F.Supp. 1382, 1387 (D.D.C. 1986), this Court held that it should accord weight to a plaintiff's choice of forum and should rarely disturb this choice unless the balance is strongly in favor of the defendant. Moreover, the Court held that it has "broad discretion" in making the transfer determination. *Id.*

The Government argues that district courts have transferred related cases to other jurisdictions. *E.g., Pesin v. Goldman Sachs & Co.*, 397 F.Supp. 392 (S.D.N.Y.1975). Presently, there are three Paradyne/SSADARS actions pending before the same judge in the Middle District of Florida: the criminal action, the DOJ civil proceeding and two consolidated class-action suits filed by Paradyne stockholders.

■ Nonetheless, timing is a most important element in this case. On November 1, 1986, Paradyne is due to submit its first invoice on the 1986–87 contract, subjecting itself to potential liability. If the Court were to transfer this case, Paradyne might well be unable to have this dispute resolved in time to avoid being pinched by the vice in which the Government has placed it. Additionally, it is unclear that the Florida court is better suited to decide the case. Fraud, the principal element of the other proceedings against Paradyne, is not at issue here. Moreover, there are no witnesses for whom transfer ought to be effected, and both defendants and all counsel reside in this district. Given these factors, the Court will deny the Government's motion to change venue.

## IV. GOVERNMENT'S MOTION TO DISMISS

### A. Sovereign Immunity

■ The United States, as sovereign, cannot be sued absent its consent. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The burden is upon the plaintiff to prove that some statute waives sovereign immunity. *Id.* In the instant case, Paradyne relies on Section 702 of the Administrative Procedure Act ("APA") to overcome this limitation. Section 702 provides that,

A person suffering legal wrong because of *agency action*, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States ... Provided, That ... [n]othing herein ... (2) confers authority to grant relief *if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*

5 U.S.C. § 702 (1982) (emphasis added). By its own terms, Section 702 provides a waiver of sovereign immunity only if the action complained of is an agency action and no other relevant statute expressly or impliedly forbids suit against the government.

Thus, the first question presented is whether there has been agency action as defined by the statute.[2] The APA's definition of an agency action is not phrased in exclusive terms. 5 U.S.C. § 551 (1982). This conclusion is supported by the language of Section 551(13) and by the APA's legislative history, manifesting a Congres-

---

**2.** The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. Section 551(13) (1982). The APA separately defines each of the terms used in this definition. An "order" is "the whole or a part of a final disposi-

tion ... of an agency in a matter other than rulemaking but including licensing." *Id.* at Section 551(6). A "sanction" includes "the whole or a part of an agency (A) prohibition, requirement, limitation, or other condition affecting the freedom of a person." *Id.* at Section 551(10).

sional intent that the statute should address a broad spectrum of agency actions. *See* H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41 (1946), U.S.Code Cong.Serv. 1946, p. 1195. In determining whether Section 702 admits of review in this case, the Court must also consider the Supreme Court's oft echoed theme that "the Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–1511, 18 L.Ed.2d 681 (1967). On the basis of these considerations, courts have held that almost any act made by an agency can be "agency action." *E.g., Standard Oil Company of California,* 596 F.2d at 1385 (9th Cir.1979), *reversed on other grounds, FTC v. Standard Oil Company of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). Courts nonetheless require an action to be final before it is termed an agency action. *See Board of Supervisors of Fairfax County, Virginia v. McLucas,* 410 F.Supp. 1052, 1055 (D.D.C.1976). The Supreme Court has construed the finality element in a "pragmatic" and "flexible" way. *See Abbott Laboratories, supra,* 387 U.S. at 149–50, 87 S.Ct. at 1515–16.

The Court concludes that at least two agency actions are at issue in this case: SSA's decision to renew its contract with Paradyne for the period of October 1, 1986 through September 30, 1987 and the DOJ's decision to sue Paradyne civilly and criminally in federal court. Some agency action is neither rulemaking nor adjudication. *See ITT Corp. v. Electrical Workers,* 419 U.S. 428, 442, 95 S.Ct. 600, 609, 42 L.Ed.2d 558 (1975). Such agency actions, like those at bar, are arrived at informally, without a formal record. *See e.g., Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414–16, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971). Regardless of the character of an act, the Supreme Court has held that an agency action is one that directly and immediately impacts an individual. *Abbott Laboratories, supra,* 387 U.S. at 152, 87 S.Ct. at 1517. In *Abbott,* the Commissioner of Food and Drugs issued regulations requiring that labels and adver-

tisements for prescription drugs bearing proprietary designations also carry corresponding technical names. Drug manufacturers and a manufacturers' association challenged this regulation. At least one factor persuading the Court to grant review was that the impact the regulation had on the petitioners was direct and immediate. *Id.* at 152, 87 S.Ct. at 1517. The Court stated,

> [E]ither they [the petitioners] must comply with the every time requirement and incur the costs of changing over their promotional material and labeling or they must follow their present course and risk prosecution.

*Id.* at 152, 87 S.Ct. at 1517. Such reasoning was reaffirmed by the Supreme Court in *ITT Corp., supra,* 419 U.S. at 443, 95 S.Ct. at 609. Therein, the Court noted that a hallmark of finality is that an agency action must result in "determinate consequences" for the party seeking review. *Cf. Geyen v. Marsh,* 775 F.2d 1303, 1308 n. 6., *rehearing denied,* 782 F.2d 1351 (1986).

█ In the instant case, the SSA's renewal of the SSADARS contract for 1986–87 requires Paradyne either to perform or to breach and be held accountable for liquidated damages. Likewise, Paradyne cannot ignore the pending law suits brought against it by the DOJ. In both cases the agency actions have direct and immediate impact and will result in determinate consequences. The finality of these decisions is highlighted in this case by the agencies' refusal to compromise with Paradyne. The Court thus holds that the SSA's and DOJ's conduct are final agency action as contemplated by the APA.

Having decided that SSA's renewal of the SSADARS contract constitutes an agency action, the Court must next determine whether Section 702 review is precluded by another statute which forbids the relief requested. It is undisputed that if Paradyne's action against the government is founded on a contract, the Tucker Act controls and sovereign immunity bars this

law suit. *Megapulse Incorporated v. Lewis*, 672 F.2d 959, 967 (D.C.Cir.1982).[3]

Thus, the pivotal inquiry is whether Paradyne's claim is one essentially founded on a contract. *Megapulse* provides a framework for evaluating this question. That case involved a government contractor's attempt to enjoin government disclosure of data the contractor had revealed pursuant to its contract. The *Megapulse* court reasoned that just because there was some reference to a contract did not mean that the claim itself was based on the contract. *Id.* at 967–68. Instead, the court looked to "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought or appropriate." *Id.* at 968. The court determined that the source of the contractor's rights was "an alleged governmental infringement of property rights and violation of the Trade Secrets Act," *id.* at 969, not the contract. Moreover, the relief sought, an injunction, was not a traditional contract remedy. *Id.* Consequently, the court held the action was not founded on the contract.

██ In the case at bar, the sources of Paradyne's rights are stated to be the APA and the Constitution, not the SSADARS contract. At base, Paradyne's claim is that the Government's conduct is impermissible. As Paradyne states in its brief, "a contract forms one jaw of the vice in which Paradyne is caught, but that hardly suffices to transform an action alleging arbitrary government conduct into a contract dispute." Paradyne's Reply at 9. Moreover, the injunction sought by Paradyne, like the relief sought in *Megapulse*, is equitable and is not traditionally sought when a claim is on a contract. As such, the Court holds that Paradyne's claims are not founded on the contract, are not precluded from

Section 702 review by the Tucker Act,[4] and therefore are not barred by sovereign immunity.

## B. Propriety of a Declaratory Judgment

Paradyne has moved the Court for declaratory relief on the basis of the Declaratory Judgment Statute, 28 U.S.C. § 2201 (1982). Pursuant to Article III of the Constitution and the rule that federal courts are not empowered to render advisory opinions, a declaratory judgment must be founded on an "actual controversy." *See Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). Paradyne and the government dispute whether an adequate case and controversy is present in this case.

Whether an alleged harm is sufficient to enable the Court to issue a declaratory judgment is a question of degree, "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing to *Maryland Casualty Company v Pacific Coal & Oil Company,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). This standard must be flexible; for, as the Supreme Court has stated, "it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Zwickler, supra,* 394 U.S. at 108, 89 S.Ct. at 959. In their discretion, *Eccles v. People's Bank of Lakewood Village,* 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948), courts must determine whether an injury or threat of injury is both "real and immediate" and not "conjectural or hypothetical." *O'Shea v. Littleton,* 414 U.S.

---

**3.** The Tucker Act limits the jurisdiction of the Court of Claims to monetary claims. *See United States v. King,* 395 U.S. 1, 4–5, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1968). *Megapulse, Inc., supra,* 672 F.2d at 967, takes the position that Congress' intent would be sidestepped if district courts were allowed to issue declaratory judgments over claims essentially founded on contract. *Id.* As such, if the instant action is

founded on the SSADARS contract, this Court is precluded from issuing a declaratory judgment.

**4.** The finding by the Court that Paradyne's claim is not founded on contract also disposes of the Government's argument that this case is governed by the Contract Disputes Act, 41 U.S.C. §§ 601–613.

488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1973).

■ Paradyne claims, and the Court agrees, that the threat posed to Paradyne as a consequence of the Government's conduct creates a constitutionally sufficient case and controversy. On December 12, 1985, the DOJ indicted Paradyne Corporation for, *inter alia,* conspiracy to defraud the United States government. *See United States v. Paradyne Corporation, et al,* Crim.A. No. 85–202 (M.D.Fla. Dec. 12, 1985). The indictment addresses only the past conduct of Paradyne, including the manner in which the SSADARS contract was obtained. The indictment does not address Paradyne's conduct under the SSADARS renewals from 1982–86. Subsequently, on August 6, 1986, the DOJ filed a civil action against Paradyne. This complaint seeks damages under the False Claims Act, 31, U.S.C. § 3729–3731 (1982), and at common law. The False Claims Act count seeks double damages and a $2,000 forfeiture "for *each* claim submitted by defendant on the SSADARS contract." *See U.S. v. Paradyne,* C.A. No. 86–1148–CIV–T–13A (M.D.Fla. Aug. 6, 1986). (Emphasis added).

Paradyne submits that a very real threat arose upon the filing of DOJ's civil complaint in August of 1986. Because the complaint states that each claim submitted by Paradyne on the SSADARS contract may be a violation of the False Claims Act, Paradyne argues that the complaint is not necessarily limited to past conduct of the company. Indeed, the language of the Government complaint admits of the interpretation that the DOJ may sue Paradyne for every invoice submitted on the SSADARS contract from 1981 until 1986, and thereafter. Moreover, Paradyne distinguishes all those invoices submitted previously from those which must be submitted on November 1, 1986 and afterwards. Paradyne notes that if it submits an invoice on November 1, it must do so with knowledge that the DOJ believes its action to be fraudulent. Paradyne fears that submission of such an invoice after it has been placed on notice that the DOJ may consider its present conduct, as well as any past conduct, to be wrongful would evidence criminal *mens rea.* Paradyne reasons that if the government has suddenly concluded that its present conduct is fraudulent and that the company is civilly liable for all invoices submitted on the renewal contract, it is only a short step to the conclusion that the DOJ may soon seek to reindict Paradyne for its conduct on the renewal contracts. Paradyne thus fears that come November 1, they may subject themselves to both civil and criminal liability if they submit the invoice for work performed under the SSADARS contract. This fear has been aggravated by the Government for, upon reaching its conclusions, Paradyne acted to allay its fears; the company contacted the DOJ and the SSA and sought assurances that if and when SSA exercised its option to renew the contract, the DOJ would not seek to impose criminal sanction, civil penalties for false claims, or to recover Paradyne's profits for work performed for the period of the contract renewal. Paradyne was informed that the Government's investigation was continuing and the DOJ refused to provide any assurances concerning criminal or civil liability.

■ The Court believes that Paradyne's fear of prosecution here is real, not chimerical. In *Bradley v. Saxbe,* 388 F.Supp. 53 (D.D.C.1974), a court in this jurisdiction was called upon to determine whether the threat of prosecution by the DOJ of individuals not complying with the registration requirements of a federal lobbying law constituted a case in controversy. In reaching the conclusion that a case in controversy did exist, the *Saxbe* Court was moved by the fact that the DOJ would not allay the plaintiff's fear of prosecution but rather informed the plaintiff that active field investigations to gather evidence were underway. *Id.* at 56. Moreover, like any form of equitable relief, a declaratory judgment is issued as a matter of judicial discretion exercised in the public interest. *Eccles, supra,* 333 U.S. at 431, 68 S.Ct. at 644. Discretion in this area is broad. *See Hal-*

*kin v. Helms,* 690 F.2d 977, 1007 (D.C.Cir. 1982). In the case at bar, the plaintiff is being pulled in opposite directions by two agencies of the United States. Notwithstanding the lack of present injury, the Court holds that the pressure being exerted on Paradyne is manifest. The peril is immediate and the threat real. Equity requires that this Court determine whether the Government should be permitted to engage in such conduct.

### C. Proprietary of Summary Judgment

Paradyne has moved for summary judgment. As the moving party, the corporation has the burden of proving that there is no genuine issue of material fact. *See Adickes v. S.H. Kress & Company,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In addition, "[o]n summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ The Government contends that there is a material fact in dispute in this case. The defendant concedes that Paradyne's statement of material facts as to which there is no genuine issue does not raise a question as to any disputed material fact. Nevertheless, the Government points to Paradyne's alleged fraud as the central fact in this dispute. The Government fundamentally misconceives Paradyne's claim. This case is not about fraud; rather, it questions the Government's right to compel performance on the one hand and to denounce and threaten punishment for it with the other. The facts material to this particular issue are before the Court. And the Government has provided no evidentiary support beyond mere allegations to corroborate its claim that there is a material fact in dispute that touches the issue before the Court. *See Fed.R.Civ.P. 56(e).* As such, the Court holds that no material facts are in dispute and will consider the plaintiff's motion for summary judgment.

### V. PARADYNE'S MOTION FOR SUMMARY JUDGMENT

#### A. Arbitrary and Capricious Governmental Conduct

■ The Court previously held that this is a case involving agency action. Such action is presumptively reviewable unless there is a contrary legislative intent proved by clear and convincing evidence. *See Abbott Laboratories, supra,* 387 U.S. at 141, 87 S.Ct. at 1511. The Government has come forward with no evidence to rebut this presumption. When agency action is informal and there is little or no record upon which to base review, an agency's conduct should be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982); *e.g., Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416–17, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Paradyne contends that the conduct of the DOJ and the SSA failed to satisfy even this forgiving standard of review. The Court agrees.

*Overton Park* provides that an agency's decision is entitled to a presumption of regularity. *Id.* at 415, 91 S.Ct. at 823. This case, however, represents an anomalous situation. There is no doubt that the SSA may ordinarily renew a contract where the terms and conditions of the contract provide for such renewal. Additionally, the DOJ is charged with the responsibility of prosecuting vigorously those who wrong the sovereign. *United States v. Jacinto Tin Co.,* 125 U.S. 273, 279, 8 S.Ct. 850, 853, 31 L.Ed. 747 (1888). Considered separately, it would be difficult to find fault with the actions of either the SSA or the DOJ. Thus, an important issue raised by this case is whether two or more agencies of the Executive Branch of government may be viewed as a single entity and held jointly responsible for the kind of consistent decision-making required in intra-agency action. The Court holds that such a fiction may be imposed in at least the circumstance where two or more government agencies have actual knowledge that their

actions will be inconsistent and the consequence of these actions entails placing an individual in a position wherein vulnerability will follow regardless of what reasonable course of action is taken. Thus, to review the conduct of the SSA and the DOJ, the Court will review the conduct of these two agencies as if they constitute a single entity.

In *Overton Park*, the Supreme Court stated that to determine whether an agency has acted arbitrarily and capriciously, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 416, 91 S.Ct. at 823. It is undisputed that the SSA and the DOJ were aware of the inconsistency of their positions. *See* Paradyne's Exhibit A. Counsel for the Government, an employee of the DOJ, explained the considerations underlying the decision to act inconsistently as follows:

> As you know, the Social Security Administration (SSA) recently has exercised its option to extend the contract for fiscal year 1987. Moreover, SSA is in the process of replacing its Paradyne equipment with equipment of another manufacturer. Until SSA is able to replace the Paradyne equipment, that equipment must remain in operation so that SSA can serve the needs of the American people. Thus, although the government believes that Paradyne equipment is in the SSA offices only because of fraud on Paradyne's part and the government now is suing Paradyne for damages, SSA currently cannot terminate its contract with Paradyne and continue to fulfill its operational obligations.

Letter from Alan E. Kleinburd, Department of Justice, to F. Whitten Peters, Attorney for Paradyne Corporation (Sept. 8, 1986) (Paradyne Exhibit D). It is evident from this letter and from the Government's briefs that the Government's conduct is motivated by the pragmatic consideration that replacing Paradyne's computers is not a task which can be effected overnight.

*Overton Park* holds that when considering the basis for agency action a court's inquiry into the facts must be "searching and careful." *Id.* at 416, 91 S.Ct. at 823. In later cases, the Supreme Court has held that an agency's rationale for its action must include "a rational connection between the facts found and the choice made." *See Bowen v. American Hospital Ass'n,* — U.S. ——, 106 S.Ct. 2101, 2112, 90 L.Ed.2d 584 (1986). The level of rationality required must be greater than that necessary to extend analysis under the Due Process Clause of the Constitution. Agency action ought not to be upheld whenever it is possible to "conceive a basis" for an agency's conduct. *Id.*

In this case, the Government's rationale for its acts is predicated on the assumption that, in fact, it has had no opportunity to replace the computers leased from Paradyne. But it is undisputed that on July 14, 1982, Congressman Brooks, Chairman of the House Committee on Government Operations, communicated to the Secretary of Health and Human Services that his Committee believed that the SSADARS procurement was marred by fraud. Despite this notice of potential fraud, the Government renewed the SSADARS contract with Paradyne in 1982, 1983, 1984, 1985, and, most recently, in 1986. The Government claimed at oral argument that it began to replace Paradyne's computers some time in 1984. Nevertheless, the Government has not expedited this process. As counsel for the Government stated

> After a year and a half of going through the process of getting the equipment, two years of getting it to the point where it was really operating properly, in late 1983, there was sort of, [reservations.] [SSA asked itself,] "are we going to start this whole process over again?"

Counsel for the Government frankly stated that the SSA made the decision to "hold tight" keeping the status quo until there was some judicial ruling of fraud or an indictment against Paradyne. The Government concedes that the time it took to react is "troublesome."

The Court finds that the combined actions of the SSA and the DOJ are arbitrary and capricious. The Court reaches its conclusion in full appreciation that its standard of review is a narrow one. The Court is not authorized to substitute its own judgment for that of the agencies. The factors relied upon by the Government which resulted in the DOJ and the SSA assuming contradictory positions have been detailed. It is this Court's task to determine whether there was a rational connection between the facts found and the choice made by the agencies. *Bowen, supra,* 106 S.Ct. at 2112. The Court finds that the Government was put on notice of Paradyne's alleged fraud on July 14, 1982 when Congressman Brooks notified the Secretary of Health and Human Services of his investigation of the SSADARS procurement. Nearly four years later, the Government is still spending approximately $8 million each year on leasing and maintenance services rendered by Paradyne Corporation. Thus, although the Government states that it has been in the process of replacing Paradyne's computers for two years, the evidence indicates that the Government's efforts have been ambivalent.

The Court recognizes that SSA was reluctant to part with a computer system which required great time and effort to procure and to perfect. Nonetheless, the record is clear; the SSA has five times renewed a contract which it knew, or should have known, would be performed by a corporation which allegedly used fraud to procure the contract in the first instance. The most recent renewal was made by the SSA in the face of knowledge that the DOJ's civil suit against Paradyne had declared the SSADARS contract null and void and threatened civil and criminal sanctions for performance of the same.

Such action by the Government is so irrational as to be arbitrary and capricious. Both the SSA and the DOJ refused to compromise with Paradyne. In such a case the Government cannot veil its inconsistent acts behind the independent proprietary of each agency's conduct. In *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934), the Supreme Court wrote the following about the function of the DOJ:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he might strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 88, 55 S.Ct. at 633. The Court is of the opinion that the Government's conduct does not comport with the high standard of conduct required of the sovereign. Paradyne does not seek wholesale immunity; it seeks only the assurance that neither it nor any of its officers or employees will be criminally prosecuted or held civilly liable for invoicing the Government for services requested by the Government during the extension period, 1986–87 and thereafter. *Berger* is not the only instance where the Supreme Court has had occasion to comment on the practices of the DOJ. In *San Jacinto Tin Co., supra,* 125 U.S. at 284, 8 S.Ct. at 856, the Court wrote, "[W]e are not insensible to the enormous power and its capacity for evil thus reposed in that department of the government." While the Court is not prepared to hold the action of the Government evil in this circumstance, the undisputed facts convince the Court that the joint actions of the SSA and the DOJ are arbitrary and capricious.[5]

5. Upon the conclusion that this case should be resolved on the basis of the APA, the Court does

## VI. RELIEF

Paradyne would have the Court hold that it can proceed on the SSADARS contract without fear of either criminal prosecution or civil sanction. However, such a broad remedy is not necessary. The Court's earlier finding of a case and controversy was founded on Paradyne's fear that the DOJ's recently filed civil action may subject it to criminal and civil liability for future performance of the SSADARS contract. For Paradyne to be vulnerable, however, the Government's civil suit must indicate the possibility of liability for future acts, and the Government must demand performance under the SSADARS contract for 1986–87. Thus, to eliminate Paradyne's fears of prosecution, the Court holds that the DOJ must limit its complaint in 86–1148–CIV–T–13A to past fraud, or the SSA must relieve Paradyne of its responsibility to perform under the 1986–87 renewal of the SSADARS contract.[6]

### ORDER

Upon consideration of plaintiff, Paradyne Corporation's, motion for summary judgment and defendants, Department of Justice, *et al.*, motion for transfer and motion to dismiss, oppositions thereto, and oral argument, it is by the Court, for the reasons stated in the accompanying Memorandum, this 3rd day of November, 1986.

ORDERED that the defendants' motion to transfer this case to the Middle District of Florida be, and hereby is, denied; it is further

ORDERED that the defendants' motion to dismiss be, and hereby is, denied; it is further

ORDERED that summary judgment for the plaintiff is granted, this Court finding as undisputed fact that the Social Security Administration executed Modification No. 37 to Contract No. 600 18–0056 between itself and Paradyne Corporation after the Department of Justice filed Civil Action No. 86–1148–CIV–T–13A in the United States District Court for the Middle District of Florida, Tampa Division, which lawsuit alleges that Paradyne Corporation is liable under the False Claims Act, 31 U.S.C. § 3729–3731 for "each claim" submitted on the aforementioned contract; it is therefore

DECLARED by the Court that the Department of Justice cannot maintain Civil Action No. 86–1148–CIV–T–13A against Paradyne Corporation so long as that suit threatens Paradyne with sanctions for acts committed after October 1, 1986, while the Social Security Administration simultaneously demands performance under Modification No. 37 to Contract No. 600–18–0056.

not reach Paradyne's constitutional arguments.

**6.** Because the relief necessary to protect Paradyne does not involve criminal immunity, the Court does not reach the question of the permissibility of that remedy.